UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ROBERT BRYANT WATTS,

                Petitioner,

v.

GREGORY SKIPPER,

                Respondent.

_____/

Case No. 1:20-cv-1215

Honorable Janet T. Neff

## **REPORT AND RECOMMENDATION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Robert Bryant Watts is incarcerated with the Michigan Department of Corrections at the Michigan Reformatory (RMI) in Ionia, Ionia County, Michigan. On May 7, 2018, Petitioner pled guilty in the Wayne County Circuit Court to two counts of second-degree murder, in violation of Mich. Comp. Laws § 750.317, and two counts of felony-firearm, in violation of Mich. Comp. Laws § 750.227b. On May 24, 2018, the court sentenced Petitioner to concurrent prison terms of 41 to sixty years on the second-degree murder convictions, to be served consecutively to concurrent sentences of two years on the felony-firearm convictions. The prosecutor bargained away first-degree premeditated murder charges.

Petitioner was charged in the shooting death of his wife and her friend, Tarance[1] Smith. (Pet'r's Mich. Ct. App. Br., ECF No. 12-10, PageID.225.) Petitioner claims that he took the plea deal because of misapprehension and fear, exacerbated by PTSD and depression and his medications for those conditions, and to prevent making his children testify at his trial. Petitioner contends his counsel rendered ineffective assistance in advising him with respect to the plea.

Petitioner's appellate counsel filed a motion to withdraw the plea. The trial court denied relief on January 3, 2019. (Wayne Cnty. Cir. Ct. Order, ECF No. 1-1, PageID.43.) Petitioner sought leave to appeal in the Michigan Court of Appeals. By order entered July 12, 2019, the court of appeals denied relief "for lack of merit in the grounds presented." (Mich. Ct. App. Order, ECF No. 1-1, PageID.41.) Petitioner then filed a *pro per* application for leave to appeal in the Michigan Supreme Court. That court denied leave by order entered December 23, 2019. (Mich. Order, ECF No. 1-1, PageID.42.)

On December 15, 2020, Petitioner filed his habeas corpus petition raising two grounds for relief, as follows:

> I.    Ineffective assistance of counsel. Trial counsel never had me evaluated for mental competency during my court proceeding. Counsel allowed me to take a plea unknowingly, understandingly, also under misapprehension and fear.

---

[1] The victim's name is spelled "Tarrance" in Petitioner's appellate brief (Pet'r's Mich. Ct. App. Br., ECF No. 12-10, PageID.225), "Tarance" in the preliminary hearing transcript (Prelim. Hr'g Tr., ECF No. 12-2, PageID.127, 138–42), and "Terrence" in the pretrial hearing transcript (Pretrial Hr'g Tr., ECF No. 12-4, PageID.157–158). Because the name is spelled on the record at the preliminary hearing (ECF No. 12-2, PageID.127), the undersigned will use the spelling "Tarance."

II.    Ineffective assistance of counsel, abuse of trial court discretion. Mr. Watts should have been granted an evidentiary hearing on the issue of ineffective assistance of counsel, and after such hearing, Mr. Watts should have been allowed to have his plea withdrawn if the court determined trial counsel was ineffective and/or pleas was not knowingly, understandingly, and voluntarily taken in violation of MCR 6.302.

(Pet., ECF No. 1, PageID.6-7.)

Respondent has filed an answer to the petition (ECF No. 11), stating that the first ground should be rejected because it is unexhausted and without merit and the second ground should be rejected because it is not cognizable on habeas review and without merit. Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless. Accordingly, I recommend that the petition be denied.

## Discussion

## I.    Factual allegations

At Petitioner's preliminary examination, his son, Robert Watts, Jr., provided testimony regarding the events that led to Petitioner's incarceration. On New Year's Eve, 2017, Mr. Watts entered the home where his wife, Theresa Watts, and his three children lived. When he arrived, he yelled for the children. Robert Jr. responded, coming to the front room of the house where he saw his mother holding back his father just inside the front door. Petitioner indicated that he wanted to see his children. His wife indicated that he could not.

Petitioner saw that his wife's friend, Tarance Smith, was in the kitchen.  He "started to freak out a little bit." (Prelim. Exam. Tr., ECF No. 12-2, PageID.141.)  He pulled a gun and pointed it at his wife.  He stopped for a moment—and then he pulled the trigger.  Petitioner then pointed the gun at Smith and shot Smith.  Theresa and Tarance died from the gunshot wounds.

Petitioner ordered the children into a bedroom, made a telephone call, and then directed the kids to get dressed.  He drove them to their grandmother's house.

At a pretrial motion hearing, the prosecutor put on the record a plea offer that had been tendered to Petitioner: "if defendant pled to two counts of second degree murder and two counts felony firearm, [the prosecutor] would ask for a sentence agreement of 40 to 60 years Michigan Department of Corrections.  Plus two years Michigan Department of Correction.  Felony firearm counts would run concurrent with each other but consecutive to and preceding the concurrent murder two terms." (Mot. Hr'g Tr., ECF No. 12-4, PageID.159.)  Petitioner declined the offer.

A few weeks later, on the Friday before the trial, which was to begin the following Monday, Petitioner appeared before the trial court to put a plea on the record.  The terms were the same as described above, except that the minimum sentence for the second-degree murder counts was reduced from forty years to 38 years.  (Pretrial Tr., ECF No. 12-6, PageID.177.)  The court proceeded through the plea colloquy.  As the prosecutor attempted to develop the factual basis for the plea by questioning Petitioner, Petitioner indicated that he shot in self-defense.  (*Id.*,

PageID.182.)  The court immediately abandoned the plea and instructed the parties to be ready for jury selection on the following Monday.  (*Id.*)

On the morning of trial, Petitioner agreed, again, to enter a plea.  The terms remained the same, except that the second-degree murder minimum terms had jumped from 38 years to 41 years.  (Plea Tr., ECF No. 12-7, PageID.188.)  The court proceeded through the plea colloquy.  This time, however, Petitioner acknowledged that the shootings were not justified.  (*Id.*, PageID.192.)  Two weeks later, the court sentenced Petitioner consistently with his agreement.

Seven months later, Petitioner filed a motion to withdraw his plea because, when he entered the plea, he was under significant emotional distress.  (Mot. Hr'g Tr., ECF No. 12-9, PageID.212.)  The trial court denied Petitioner's motion.

On appeal, Petitioner argued his plea was not knowing and voluntary because it was made "under fear and misapprehension as he was not competent due to his mental health challenges he was facing at the time of the trial court proceedings." (Pet'r's Appeal Br., ECF No. 12-10, PageID.217–218.)[2]  Petitioner contended that his counsel was ineffective for not pursuing the issue of Petitioner's competence and that

_____

[2] The record support offered regarding Petitioner's mental health status at the time of his plea included only his statements that he "was not in the right mental state during [his] court dates," (Pet'r's Statement, ECF No. 12-10, PageID.233), that he took the plea "under mental and emotional distress," (*Id.*; Pet'r's Aff., ECF No. 12-10, PageID.235), and that he was under "[psychological] medication and could not make a reasonable or [rational] decision," (Pet'r's Aff., ECF No. 12-10, PageID.235). Petitioner also made a passing reference in the presentence investigation report that Petitioner suffered from Post-Traumatic Stress Disorder (PTSD) and Clinical Depression (Pet'r's Appeal Appl. for Leave to Appeal, ECF No. 12-10, PageID.218.) There is nothing more in the state court record, however, that supports Petitioner's claim that he was not competent at the time he entered his plea.

the trial court should have held an evidentiary hearing and should have permitted Petitioner to withdraw his plea.  As set forth above, Petitioner's contentions were rejected as meritless by the Michigan Court of Appeals and the Michigan Supreme Court refused to address the matter further.

## II.    AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials' " and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693–94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:   "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."   28 U.S.C. § 2254(d).  "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can

review the underlying claim on its merits.  *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721.  Then, the petitioner's claim is reviewed *de novo*.  *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.    Failure to permit plea withdrawal (habeas ground II)

A state defendant has no constitutionally guaranteed right to withdraw a guilty plea.  *See Carwile v. Smith*, 874 F.2d 382 (6th Cir. 1989).  The only constitutional challenge that a habeas court may entertain with regard to a plea of guilty is that the plea was not entered in a knowing and voluntary fashion under the standards set forth in *Boykin v. Alabama*, 395 U.S. 238 (1969).  A habeas court is restricted to these federal principles, and may not grant habeas relief on the basis of state law governing the taking or withdrawal of guilty pleas.  *Riggins v. McMackin*, 935 F.2d 790, 794-95 (6th Cir. 1991).  Consequently, the question whether petitioner should have been allowed in the court's discretion to withdraw his guilty plea under state-court rules is not reviewable in habeas corpus.

## IV.    Knowing and voluntary plea

A plea not voluntarily and intelligently made violates due process and is void. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969).  On the other hand, "[i]t is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984).

The test for determining a guilty plea's validity is " 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' " *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).  Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970), and may consider such factors as whether there is evidence of factual guilt.  While courts may consider whether a factual basis for a guilty plea exists in their assessments of its validity, it has generally been held that the Constitution does not require that they ensure such a basis exists.  *See Higgason v. Clark*, 984 F.2d 203, 208 (7th Cir. 1993) (" 'Strong evidence of guilt' may suffice to sustain a conviction on an *Alford* plea, and may be essential under Rule 11 [of the Federal Rules of Criminal Procedure], but it is not necessary to comply with the Constitution.") (quoting *Alford*, 400 U.S. at 37); *see also Matthew v. Johnson*, 201 F.3d 353, 365 (5th Cir. 2000); *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995) (citing *Higgason*, 984 F2d at 208); *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1983); *Thundershield v. Solem*, 565 F.2d 1018 (8th Cir. 1977); *Edwards v. Garrison*,

529 F.2d 1374, 1376 (4th Cir. 1975); *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975); *Freeman v. Page*, 443 F.2d 493, 497 (10th Cir. 1971).

In order to find a constitutionally valid guilty plea, several requirements must be met.  The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel.  *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving.  *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted).

11

Finally, the defendant must have available the advice of competent counsel. *Tollett*, 411 U.S. at 267-68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made. *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel). Ineffective assistance of counsel will render a plea of guilty involuntary. *See Hill*, 474 U.S. at 56-57.

Petitioner's arguments implicate three of the requirements. He suggests he was not competent to enter his plea. Alternatively, if his mental health did not render him incompetent, he claims that the combination of his poor mental health and the circumstances coerced his plea. And, finally, Petitioner complains that his counsel rendered ineffective assistance in connection with Petitioner's decisions with regard to the plea.

### A.    Petitioner's competence

Just as a criminal defendant who is incompetent may not be tried, *Godinez v. Moran*, 509 U.S. 389, 396 (1993), a defendant who is incompetent may not enter a plea of guilty, *see Brady*, 397 U.S. at 756. The test for a defendant's competence to stand trial or plead is "whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 411 (1960); *see also Godinez*, 509 U.S. at 396; *United*

*States v. Denkins*, 367 F.3d 537, 547 (6th Cir. 2004) (quoting *United States v. Ford*, 184 F.3d 566, 580 (6th Cir. 1999). A court's failure to hold a proper hearing where substantial evidence exists of the defendant's incompetency violates the defendant's due process right to a fair trial. *Mackey v. Dutton*, 217 F.3d 399, 411 (6th Cir. 2000). "[T]he standard . . . for requiring competency hearings prior to trial or the entry of a guilty plea is not merely whether extant evidence raises 'doubt' as to the defendant's capacity to stand trial, but rather whether evidence raises a 'bona fide doubt' as to a defendant's competence." *Warren v. Lewis*, 365 F.3d 529, 533 (6th Cir. 2004). In reaching its determination regarding competency, a court should consider evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion concerning his competence. *Mackey*, 217 F.3d at 411.

Petitioner seems to suggest that because he can point to diagnoses such as post-traumatic stress disorder or clinical depression he has demonstrated that he was not competent. Certainly a history of mental illness may be relevant to an inquiry regarding competency, but " it does not follow that because a person is mentally ill he is not competent to stand trial." *United States v. Miller*, 531 F.3d 340, 349 (6th Cir. 2008) (quoting *United States v. Davis*, 93 F.3d 1286, 1290 (6th Cir. 1996)). The Sixth Circuit recently emphasized that a prisoner must show something more to avoid his plea:

> To trigger the court's duty to hold a competency hearing *sua sponte*, the defendant must tie his ailments to a "'deep[ ] breakdown' in cognition," *United States v. Tucci-Jarraf*, 939 F.3d 790, 795 (6th Cir. 2019) (quoting *Coleman*, 871 F.3d at 477), such that he lacked the "ability to consult with counsel, assist in his own defense, or understand the proceedings against him," *United States v. Alfadhili*, 762 F. App'x 264, 268 (6th Cir. 2019).  This court has affirmed challenged pleas when the defendant fails to make such a connection.  *See, e.g., id.* ("bi-polar disorder, PTSD, and depression"); *Miller*, 531 F.3d at 349 (paranoia); *Mackey v. Dutton*, 217 F.3d 399, 410–14 (6th Cir. 2000) (schizophrenia).

*United States v. Hutchinson*, 831 F. App'x 195, 198 (6th Cir. 2020).

Petitioner never takes the next step.  He fails to show how his diagnoses led to a breakdown in cognition.  Indeed, review of the entire state court record indicates that Petitioner displayed appropriate cognition throughout the pretrial, plea, and sentencing proceedings.  Moreover, the preliminary examination testimony of Petitioner's son strongly supported at least one, and possibly two,  first-degree murder convictions which would carry a penalty of life imprisonment without parole.  Thus, Petitioner's plea to second-degree murder—even with a severe agreed-upon minimum sentence—was hardly irrational.  Accordingly, the appellate court's rejection of Petitioner's competency argument finds sufficient factual support in the record and is neither contrary to, nor an unreasonable application of, clearly established federal law.

**B.    Involuntary plea**

Petitioner also suggests that his plea was involuntary because he was coerced by "misapprehension and fear."[3]  (Pet., ECF No. 1, PageID.6.)  Petitioner does not identify the source of his fear.  The record suggests two possibilities: the threat of possible life imprisonment and the detrimental impact that forcing his children to testify might have on them and their relationship with Petitioner.  The offense with which Petitioner was charged carries a mandatory life sentence without parole.  Mich. Comp. Laws § 750.317a.[4]  It was the responsibility of Petitioner's counsel and the court to inform Petitioner of the consequences of accepting or rejecting the plea agreement.  As the Supreme Court has stated, "confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, [but] the imposition of these difficult choices [is] an inevitable'—and permissible—'attribute of any legitimate system which tolerates and encourages the negotiation of pleas.'"  *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (quoting *Chaffin v. Stynchcombe*, 412 U.S. 17, 31 (1973)).  Informing Petitioner of the prospect of a life sentence, therefore, "is not coercive[.]"  *Williams v. United States*, 47 F. App'x 363, 370 (6th Cir. 2002).

---

[3] In Petitioner's reply, he suggests the problem was more misapprehension than fear. (Pet'r's Reply, ECF No. 14, PageID.359.)

[4] Indeed, it was only by virtue of the prosecutor's willingness to negotiate away the prospect of a life sentence—agreeing to a specific minimum sentence—that Petitioner avoided the risk of a life sentence.

Similarly, the detrimental impact that might follow from proceeding with trial and the attendant necessity of compelling Petitioner's children—the only witnesses who survived Petitioner's crimes—to testify is simply a natural consequence of Petitioner's criminal behavior.  Even if Petitioner's counsel, the prosecutor, or the court emphasized that Petitioner could avoid that detrimental impact by pleading guilty, that would not be coercive.  "[I]nforming the Defendant of the positive and negative effect of pleading guilty is not coercive . . . ."  *Id.*; *see also United States v. Green*, 388 F.3d 918, 923 (6th Cir. 2004) ("[A]ccurate information regarding the possible ramifications of proceeding to trial cannot be construed as coercive."); *United States v. Bennett*, 252 F.3d 559, 563 n.6 (2d Cir. 2001) ("[T]he voluntariness of a guilty plea is not undermined just because the plea is induced by a defendant's desire to benefit others.").

When a state defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993); *see also McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Garcia*, 991 F.3d at 326).  Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself.  *Id.* A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings.  *Id.* at 328; *see also Parke v. Raley*, 506 U.S. 20, 29 (1992) (holding that the factual findings of

16

voluntariness made by the state court are entitled to a presumption of correctness); *Blackledge v. Allison*, 431 U.S. 63, 73 (1977) (a solemn plea of guilty presents a "formidable barrier" to a subsequent claim to the contrary).

The trial judge in Petitioner's case specifically asked Petitioner if there were promises or threats that caused him to enter his plea other than the terms of the agreement that were put on the record.  Petitioner said there were not.  (Plea Tr., ECF No. 12-7, PageID.190.)  Petitioner's present assertion that that he was coerced by his fears does not overcome his sworn statement to the contrary in the plea transcript.

Accordingly, Petitioner has failed to show that the state appellate court's rejection of the claim that Petitioner's plea was coerced is contrary to, or an unreasonable application of, clearly established federal law.

### C.    Ineffective assistance of counsel

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:    (1)  that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Id.* at 687.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v.*

17

*Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).[5]

---

[5] The Michigan Court of Appeals issued only a summary affirmance, denying the appeal for lack of merit in the grounds presented.  That affirmance, however, is deemed a decision on the merits of the claims presented that is entitled to AEDPA deference.  *See Harrington*, 562 U.S. at 99; *see also Johnson v. Williams*, 568 U.S. 289, 298 (2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference).

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel.  *Hill*, 474 U.S. at 58.  Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness.  *Id.*  In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process.  "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Id*. at 59.

Not every ineffective assistance of counsel claim survives a guilty plea.  Claims about the deprivation of constitutional rights that occur before the entry of a guilty plea are foreclosed by that plea.  *See United States v. Broce*, 488 U.S. 563, 569 (1989); *Tollett*, 411 U.S. at 267.  The United States Supreme Court has explained:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [constitutional standards].

*Tollett*, 411 U.S. at 267.  Consequently, a knowing and voluntary guilty plea waives all nonjurisdictional defects in the proceedings, including a claim of ineffective assistance of counsel that does not relate to the voluntariness of the plea.  *See United States v. Stiger*, 20 F. App'x 307, 308–09 (6th Cir. 2001).

Petitioner's claims of ineffective assistance focus on two issues: first, Petitioner claims that counsel should have called into question Petitioner's competence; and second, Petitioner suggests that counsel failed to inform Petitioner regarding the effect Petitioner's claim of self-defense would have on the plea process.[6] (Pet., ECF No. 1, PageID.6.)    With regard to counsel's failure to challenge Petitioner's competence, as set forth above, Petitioner has failed to show that he was, in fact, incompetent.   Nothing in the court record suggests that Petitioner suffered a breakdown in cognition that would support pursuing a claim that Petitioner was incompetent.   All of the transcripts indicate that Petitioner was coherent and appropriately responsive during court hearings and Petitioner's counsel reported on the record that he and Petitioner had meaningful discussions regarding the plea offers.   Petitioner seems to suggest that depression or PTSD or the medications he was taking to address those conditions equate to incompetence.   He is simply wrong.

Moreover, even if Petitioner's mental health conditions or medications should have prompted counsel to pursue the matter further, Petitioner cannot show prejudice because the record does not support a finding that Petitioner was indeed incompetent.    Accordingly,  the  state  appellate  court's  determination  that  this ineffective assistance claim lacked merit, whether it is premised on the first, second,

---

[6] Petitioner's ignorance regarding that effect is, apparently, the "misapprehension" that he refers to repeatedly in his habeas and state court pleadings.   That ignorance, Petitioner claims, cost him an additional 3 years on his minimum sentence.   The plea deal on the Friday before trial was for a consecutive minimum string of 40 years. After the trial court refused to accept that plea upon Petitioner's claim of self-defense, the plea eventually entered on the morning of trial required a consecutive minimum string of 43 years.

or both *Strickland* prongs, is neither contrary to, nor an unreasonable application of clearly established federal law.

Petitioner's other ineffective assistance claim fares no better.[7]  There is nothing in the preliminary examination testimony that would tip counsel off that Petitioner believed his shootings were justified by the self-defense doctrine.  Petitioner does not claim that he informed counsel that Petitioner believed the shootings were justified by the self-defense doctrine.  What reason would counsel have to explore with Petitioner the elements of a defense that would appear to have no applicability?  Moreover, what reason would counsel have to know that Petitioner intended to raise his justification defense for the first time at the plea hearing?  The court of appeals' determination that there was no merit to Petitioner's ineffective assistance claim based on counsel's failure to correct Petitioner's misapprehension is neither contrary to, nor an unreasonable application of *Strickland*.

For all of these reasons, therefore, Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claims.  And for all of these reasons Petitioner is not entitled to habeas relief on the claim that his plea is invalid.

---

[7] Petitioner's claim that counsel failed to adequately inform Petitioner regarding a defense is unusual.  Typically, a criminal defendant might complain that he entered a plea improvidently because counsel failed to inform the defendant of a valid defense or that he rejected a plea improvidently because counsel misrepresented the chance of success on a defense.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied.  Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.


Dated:  August 26, 2021                          /s/ Phillip J. Green
                                                 PHILLIP J. GREEN
                                                 United States Magistrate Judge


## NOTICE TO PARTIES

ANY OBJECTIONS to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).